# M. M. BROWNBACK ET AL. v. GEORGE OZIAS.

ERROR TO THE COURT OF COMMON PLEAS OF MONTGOMERY
COUNTY.

Argued April 18, 1887—Decided October 3, 1887.

A mortgage for $1,000 was executed by Walter in 1829 and in 1855 assigned to Grubb, who failed to record the assignment till 1883. In 1865 the administrators of the mortgagor sold the mortgaged premises, by order of the Orphans' Court, for the payment of debts, to Hartzel. The mortgage debt was scheduled in the petition, and, in the confirmed account of the administrators, credit was taken for that debt as paid. It seemed, however, that the mortgage was not paid, but by agreement it was to remain upon the land and its amount to be deducted from the purchase money. Hartzel paid interest thereon to Grubb, and in 1873 conveyed to Wood, subject to the payment "of a certain mortgage of $1,000 unto George Grubb of the county of Chester." Wood paid interest to Grubb to 1881, but in 1874 he had conveyed to Mitchell without a charge, taking a purchase money mortgage; and in 1878, at a sheriff's sale upon this last mortgage, the premises were sold to Ozias. In a scire facias by Grubb against Walter, mortgagor, and Ozias, terre-tenant; *Held,*

1. That the charge in the deed of Hartzel to Wood was insufficient to affect Ozias with notice that the Walter mortgage had been kept alive, and was at best but an equitable lien discharged by the sheriff's sale to Ozias.

2. That the Orphans' Court sale divested the lien of the mortgage in suit, and in the absence of notice of facts to the contrary, Ozias was a bona fide purchaser for value and entitled to judgment.

Before MERCUR, C. J., GORDON, TRUNKEY, GREEN and CLARK, JJ.; PAXSON and STERRETT, JJ., absent.

No. 102 January Term 1886, Sup. Ct.; court below, No. 66 June Term 1883, C. P.

This was a scire facias sur mortgage issued on April 24, 1883, by Mira M. Brownback and Lewis C. Brownback, administrators of George Grubb, deceased, who was assignee of

Jacob Welker, administrator of John Welker, deceased, against John Walter, with notice to George Ozias, terre-tenant. The plea was, *payment*. On September 24, 1885, judgment was entered by confession against the administrators of John Walter, then deceased, for $1,309, to be levied and collected out of the mortgaged lands, and the cause proceeded upon a defence made by the terre-tenant, in which the following facts appeared:

On April 1, 1829, John Walter executed a mortgage to John Welker for $1,000, on certain real estate in Marlborough township, containing 66 acres and 55 perches, which mortgage was recorded. On April 9, 1855, this mortgage was assigned to one George Grubb, but the assignment was not then entered of record. On September 30, 1865, John Walter having died still seized of said land, his administrators, under order of the Orphans' Court for the payment of debts, the said mortgage debt being scheduled in the petition, sold said land to Jacob Hartzel, which sale was confirmed, and deed ordered, executed and delivered to the purchaser. On March 11, 1867, the administrators of John Walter filed a final account in which credit was taken for the said mortgage debt as paid by them, which account was confirmed. On October 29, 1873, Jacob Hartzel conveyed said land to Israel Wood, and in this deed was the following clause: " Subject, nevertheless, to the payment of a certain mortgage of $1,000 unto George Grubb, of the county of Chester, and all interest accruing due thereon from the first day of April ult." On September 24, 1874, Israel Wood conveyed the same to Edward Mitchell, without charge, and took a purchase money mortgage for $3,250. This last mortgage on April 26, 1875, was assigned by Israel Wood to J. W. Sunderland, who on April 28, 1875, assigned it to George Ozias. In 1878, George Ozias obtained judgment in a scire facias upon said purchase money mortgage, issued a levari facias thereon, and at a sheriff's sale became the purchaser of said land, receiving a sheriff's deed acknowledged in open court on September 7, 1878. On April 10, 1883, the assignment of the mortgage against John Walter to George Grubb was put on record, and this suit brought the same month.

On the trial, in addition to the foregoing facts, testimony

for the plaintiff showed that interest had been regularly paid
to George Grubb by Jacob Hartzel, from 1867 to 1873, and by
Israel Wood from 1874 to 1881. Jacob Hartzel testified that
he bought the land from Walter's administrators at $51 per
acre, and paid all except the $1,000 mortgage, about which he
had an agreement. One of the administrators of John Wal-
ter testified that he had sold the land to Jacob Hartzel with
the understanding that the mortgage was to remain, and that
the debt due thereon was not paid by the purchaser. This
testimony was admitted under the objection by defendant that
it was not accompanied with notice to him.

The court charged the jury, inter alia, as follows :

[Now when Ozias became the purchaser at sheriff's sale,
unless he had notice of the condition of this mortgage, he had
a right to be governed by the record; when he looked to that
he saw that there had been a judicial sale, the operation of
which was to discharge the mortgage. And when he looked,
if he did, to the deed of Hartzel to Wood, he found mention
of a mortgage of $1,000 to George Grubb; and if he looked
for a mortgage upon record of that description he failed to
find it, for there was no mortgage to George Grubb. If
George Grubb's assignment had been recorded at that time it
might be effectual in putting him upon that inquiry which
would lead to the knowledge of an existing mortgage.][2] But
the assignment to Grubb was not recorded until afterwards,
and therefore it was no notice to Ozias. [Guided by the record
as he found it, therefore, Ozias had a right to conclude that
the mortgage under which the property was sold at sheriff's
sale was the first mortgage upon the premises, and that the
mortgage in question had no existence.][3] [There is no evi-
dence in this cause of any actual notice to Ozias from any
other quarter than what might be inferred from the record to
which I have called your attention; and therefore the court
cannot submit to you the question as to whether Ozias had
actual notice.][4] The plaintiff offered evidence to show that
the Orphans' Court sale, instead of being a public sale as the
record purported, was actually a private sale, and if so that
was an irregularity which would have set aside the sale upon
exceptions filed to it. But Ozias had a right to assume that
the record was true, and that the sale was according to law,

for it had been returned as such, and as such confirmed by the court. I charge you therefore, that that evidence was immaterial and not competent to discredit the record. [Under all these circumstances therefore, the court is constrained to charge you in this case as a matter of law that your verdict should be in favor of the defendant.] [1]—

On verdict for the defendant and judgment thereon, the plaintiffs took this writ assigning for error:

1–4. The parts of the charge embraced in [ ] [1] [ ] [2] [ ] [3] [ ] [4]

*Mr. Franklin March* and *Mr. G. R. Fox* (with them *Mr. H. M. Brownback*), for the plaintiffs in error:

1. The court ruled that Ozias was a bona fide purchaser without notice, which was error. Wood held title under the recorded deed from Hartzel which contained the clause that it was subject to the payment of a certain mortgage to George Grubb. Therefore Ozias would have found this conclusive notice on the face of the second deed he reached, and inquiry of Wood or of Hartzel would have given him all the facts. The words, "under and subject," are apt words imposing a lien. And the court erred in not submitting to the jury to find whether Ozias had actual notice or not: Trefts v. King, 18 Pa. 159, 404; Butcher v. Yocum, 61 Pa. 170; Biddle v. Moore, 3 Pa. 161.

2. Every recital of a fact affecting the title to the premises contained in a deed, will be presumed to be known to a purchaser, and he will be affected with notice thereof in the same manner and to the same extent as though he had actual knowledge: White v. Foster, 102 Mass. 375; George v. Kent, 7 Allen 16; 1 Jones Mort. 572, 558, 595; Dexter's App., 81 Pa. 403; Jermon v. Lyon, 81 Pa. 107; Walsh v. Stille, 2 Pars. 21; Parks v. Chadwick, 8 W. & S. 96; Sergeant v. Ingersoll, 7 Pa. 340; s. c. 15 Pa. 348.

3. Constructive notice is evidence of notice. Whatever is sufficient to put a party upon inquiry is, in equity, held to be good notice to bind him: Billington v. Welsh, 5 Binn. 134; Speer v. Evans, 47 Pa. 141; York Bank's Appeal, 36 Pa. 458; Mellon's App., 96 Pa. 477; Boggs v. Vernon, 6 W. & S. 469; Epley v. Withrow, 7 W. 163; Lodge v. Simonton, 2 P. & W.

Opinion of the Court.

439; Mulliken v. Graham, 72 Pa. 490; Angier v. Schieffelin, 72 Pa. 109; Knouff v. Thompson, 16 Pa. 364; Bellas v. Lloyd, 2 W. 401; Ogden v. Porterfield, 34 Pa. 191; Maul v. Rider, 59 Pa. 167; Parke v. Neely, 90 Pa. 59.

*Mr. Samuel Money, Jr.*, and *Mr. Chas. Hunsicker*, for defendant in error:

The case was properly ruled below for the following reasons:

(1.) The Orphans' Court sale of the real estate bound by the lien of the mortgage in suit divested the lien thereof. (2.) No agreement to continue the lien thereof, notwithstanding the sale, could affect subsequent purchasers without notice. (3.) The words in the deed from Hartzel to Wood did not describe this mortgage in suit. (4.) There was no such mortgage on record, and had he thought the Walter's mortgage was intended, the record would have shown that it was divested by the judicial sale; and the account filed by the administrators would have shown that it was actually paid by credit being taken for it therein under the oath of the administrators. (5.) If there was any lien of any kind by virtue of the reservation in the deed from Hartzel to Wood, the same was divested and discharged when the property was sold at sheriff's sale on the purchase money mortgage given by Mitchell to Wood: Dexter's App., 81 Pa. 403; Pierce v. Gardener, 83 Pa. 211; Hiester v. Green, 48 Pa. 96; Herst v. Baker, 49 Pa. 9; Stewartson v. Watts, 8 W. 392.

OPINION, MR. JUSTICE GREEN:

It is not at all questioned that the Orphans' Court sale divested the lien of the mortgage in suit. The whole record of that proceeding was in confirmation of that result. When the administrators of John Walter, the mortgagor, filed their account in March, 1867, they claimed and were allowed credit for the payment of the mortgage. When Hartzel conveyed to Wood it was subject "to the payment of a certain mortgage of one thousand dollars unto George Grubb of the county of Chester." In point of fact there never was a mortgage which corresponded with that description, and hence any amount of inquiry would never have developed the existence of such a

mortgage. But it is argued that George Grubb's interest in the original mortgage to Jacob Welker might have been discovered if Ozias had made inquiry of Hartzel, Wood and Mitchell. Possibly this might be so; but George Grubb's interest in a mortgage made to some other person, is not the fact mentioned in the charge contained in the deed from Hartzel to Wood, and hence Ozias was not bound to inquire for it, any more than he would have been bound to inquire for any other fact extrinsic to the record known to his predecessors in the title and affecting his interest. That which appeared in the language of the charge contained in the deed from Hartzel to Wood, would bind a purchaser, of course, but why should he be bound by matter which did not appear there? At the best this sort of notice is but constructive notice, and it is quite enough to hold a purchaser bound by that which does appear upon the record, without subjecting him to responsibility by construction for that which does not appear there. The mortgage which is now claimed against the defendant is the original Walter mortgage, but of that instrument there is no kind of description, not even an allusion to it, contained in the deed from Hartzel to Wood. Why should a subsequent purchaser inquire for that mortgage when there was nothing in the deed which in any manner indicated its existence? When the defendant examined the record, he found that the Walter mortgage was discharged by the Orphans' Court sale and paid, as indicated by the administrators' account of John Walter's estate. He therefore could not suppose that the description in the Hartzel deed of a mortgage payable to George Grubb, could refer to it, and hence he was under no legal duty to inquire whether that description was intended to refer to that mortgage. If he was under no legal duty to make such an inquiry he is not chargeable with constructive notice for breach of such a duty.

Grubb did not see fit to record his assignment of the Walter mortgage and he thereby prevented innocent subsequent purchasers from acquiring a knowledge of his interest in that mortgage, by the method which the law recognizes as proper constructive notice. It was his own dereliction, and if loss to him is occasioned by it, that loss must rest with him rather than with an innocent purchaser, who, in consequence of that

very dereliction, was prevented from acquiring a knowledge of Grubb's interest which would have enabled him to protect himself. Between Grubb and Ozias, so far as this question is concerned there is no equality of innocence. Grubb knew that he held an assignment of the Walter mortgage and that he had not recorded it. He knew also that the mortgage was discharged by the Orphans' Court sale and that its lien was only preserved, if at all, by a private agreement between Hartzel and Walter's administrators. He is presumed to know that while Hartzel would be bound by that agreement, it would not be binding upon a subsequent purchaser without notice. If he wished to preserve the lien of the mortgage debt against all persons, he should either have taken a new mortgage in his own name, or at the very least placed his assignment from Welker, on record, so that there would have at least been a duty of inquiry resting upon a purchaser. It is quite probable he was not a party to the insertion of the charge in the deed from Hartzel to Wood. If he was, his dereliction would be increased by the incorrectness of the description. If he was not, he can claim no benefit from it other than that which necessarily and technically belongs to it. Tried by that standard the charge in the deed is in no sense notice of a mortgage from Walter to Welker made in 1829, and that particular mortgage is the only cause of action set up against the defendant Ozias.

It is almost needless to add that the charge in the deed itself is not available to the plaintiff as a lien, since it would constitute at the best but an equitable lien which was discharged by the sheriff's sale at which the defendant purchased the land: Pierce v. Gardner, 83 Pa. 211.

Judgment affirmed.